Scott Ferrell – SBN 202091
Email:  sferrell@trialnewport.com
NEWPORT TRIAL GROUP
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Telephone:  949.706.6464
Facsimile:    949.706.6469

Attorney for Plaintiff
Carl's Jr. Restaurants LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL'S JR. RESTAURANTS LLC,<br><br>Plaintiff,<br><br>v.<br><br>6POINTS FOOD SERVICES LTD.,<br>MICHAEL MEEKINS, and MICHAEL<br>LEVINE,<br><br>Defendants. | Case No. CV 15-9827-GHK (ASx)<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND MONEY JUDGMENT AND JURY DEMAND** |

1

Plaintiff Carl's Jr. Restaurants LLC ("CJR"), for its First Amended Complaint against Defendant 6Points Food Services Ltd. ("6Points"), Michael Meekins, and Michael Levine, alleges on knowledge, information and belief as follows:

## **INTRODUCTION**

1.      CJR is a franchisor that has developed and owns a distinctive system relating to the development, establishment and operation of fast services restaurants, called the "Carl's Jr. System." On November 13, 2013, CJR and 6Points entered into a Development Agreement under which 6Points committed, according to a specified schedule, to open thirty Carl's Jr. restaurants in Ontario by January 31, 2020. Although 6Points agreed that "time is of the essence," it failed to open restaurant 3 by the contractually-required date (January 31, 2015) and has failed to take the actions necessary to open restaurants 5-8 by the contractually-required date (January 31, 2016).

2.      Further, under the separate Franchise Agreements for the four restaurants that 6Points has opened, 6Points is required to pay CJR certain royalties and fees. 6Points breached the Franchise Agreements by failing to paying those royalties and fees in full.

3.      6Points also breached its obligation to obtain and deliver a letter of credit to CJR in the amount of CAD $1,000,000 as security for its obligations under the Development and Franchise Agreements. Individual defendants Michael Meekins and Michael Levine are co-owners of Westbridge Capital Ltd. ("Westbridge"), a Canadian investment company that focuses on real estate syndication and private equity investments. Westbridge owns 100% of 6Points. In the course of negotiations of the Development and Franchise Agreements, Messrs. Meekins and Levine represented that they would cause 6Points to obtain a letter of credit to secure its obligations to CJR under the Development and Franchise Agreements. As a result of these representations, CJR did not require the

1

individual defendants to guarantee 6Points obligations under the parties' agreements.  Messrs. Meekin and Levine, however, did not cause 6Points to obtain the letter of credit.

4.      Finally, in a letter dated November 10, 2015, counsel for 6Points purported to rescind its agreements with CJR, falsely asserting that two years after executing the Development Agreement 6Points had the right to rescind under the Ontario franchise disclosure law.  6Points' purported Notice of Rescission constitutes an anticipatory repudiation of the Development and Franchise Agreements.

## PARTIES

5.      Carl's Jr. Restaurants LLC is a Delaware limited liability company, with its principal place of business located at 6303 Carpinteria Avenue, Carpinteria, CA 93013, U.S.A.

6.      CJR's sole member is Carl's Jr. Funding LLC, which is a Delaware limited liability company with its principal place of business located at 6303 Carpinteria Avenue, Carpinteria, CA 93013, U.S.A.

7.      Carl's Jr. Funding LLC's sole member is Carl's Jr. SPV Guarantor LLC, which is a Delaware limited liability company with its principal place of business located at 6303 Carpinteria Avenue, Carpinteria, CA 93013, U.S.A.

8.      Carl's Jr. SPV Guarantor LLC's members are Carl Karcher Enterprises LLC and Santa Barbara Restaurant Group LLC.  Carl Karcher Enterprises LLC is a California limited liability company, with its principal place of business located at 6303 Carpinteria Avenue, Carpinteria, CA 93013, U.S.A. Santa Barbara Restaurant Group LLC is a Delaware limited liability company, with its principal place of business located at 6303 Carpinteria Avenue, Carpinteria, CA 93013, U.S.A.

9.      Carl Karcher Enterprises LLC and Santa Barbara Restaurant Group LLC each have only one member, CKE Restaurants Holdings, Inc., which is

2

incorporated under Delaware law with its principal place of business located at 6303 Carpinteria Avenue, Carpinteria, CA 93013, U.S.A.

10.     6Points Food Services Ltd. is a limited liability company incorporated under the laws of Ontario, with its principal place of business located at Unit A-28, 134 Primrose Drive, Saskatoon, Saskatchewan, Canada S7K 5S6.  6Points' sole member is Westbridge Capital Ltd.

11.     Westbridge Capital Ltd. is a limited liability company with its principal place of business in Saskatchewan, Canada.  Westbridge has four members—Michael Levine, Michael Meekins, Kemco Holdings Inc., and Jim Hutch.

12.     Michael Levine is President of 6Points, and an officer and member of Westbridge.  Mr. Levine is employed at Westbridge's offices in Saskatchewan, Canada, and his residence is located at 804, 510—5th Avenue North, Saskatoon, Saskatchewan, Canada.  On information and belief, Mr. Levine is a citizen of Canada, is not a permanent resident of the United States, and is not domiciled in any state in the United States.

13.     Michael Meekins is President, CEO, and a member of Westbridge. Mr. Meekins is employed at Westbridge's offices in Saskatchewan, and his residence is located at 209 Copland Crescent, Saskatoon, Saskatchewan, Canada. On information and belief, Mr. Meekins is a citizen of Canada, is not a permanent resident of the United States, and is not domiciled in any state in the United States.

14.     Jim Hutch is a member of Westbridge.  Mr. Hutch's residence is located at 1150, 802 Heritage Crescent, Saskatoon, Saskatchewan, Canada.  On information and belief, Mr. Hutch is a citizen of Canada, is not a permanent resident of the United States, and is not domiciled in any state in the United States.

15.     Kemco Holdings Inc. is a member of Westbridge.  On information and belief, Kemco Holdings is incorporated under the Saskatchewan law with its

3

principal place of business located at 114 Kaplan Green, Saskatoon, Saskatchewan, Canada.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over all causes of action stated herein pursuant to 28 U.S.C. § 1332(a)(2).

17.    This Court has personal jurisdiction over 6Points under California's Long-Arm Statute, Cal. Code Civ. Proc. § 410.10, and by virtue of 6Points' continuous and systematic contacts within the state of California and this judicial District.  Personal jurisdiction is also proper pursuant to the forum selection provisions of the agreements that are the subject of this action, in which 6Points consented to personal jurisdiction in the jurisdiction in which CJR's principal offices are located.  CJR's principal offices are, and were at the time of signing the relevant agreements, located in Carpinteria, CA, which is located in the Western Division of this District.

18.    This Court has personal jurisdiction over the individual defendants under California's Long-Arm Statute, Cal. Code Civ. Proc. § 410.10.  Those defendants made representations to CJR that they would cause 6Points to obtain a letter of credit, which they then failed to do.  CJR suffered injury within this jurisdiction as a result the individual defendants' actions and omissions.  Further, Messrs. Meekins and Levine engaged in negotiations with CJR, which required numerous and significant contacts with the State of California and resulted in no less than six separate agreements with the California-based CJR.  The individual defendants' negotiations give rise to, at the very least, specific personal jurisdiction, as CJR's claims and defenses arise directly from those negotiations and agreements.

19.    Venue is proper in this jurisdiction pursuant to 18 U.S.C. § 1391(b)(2).  Venue is also proper pursuant to the forum selection provisions of the agreements that are the subject of this action, in which 6Points consented to venue

FIRST AMENDED COMPLAINT

in the jurisdiction in which CJR's principal offices are located.  CJR's principal offices are, and were at the time of signing the relevant agreements, located in Carpinteria, CA, which is located in the Western Division of this District.

## FACTUAL BACKGROUND

20.    CJR is a fast service restaurant chain that operates restaurants under the name "Carl's Jr."  Carl's Jr. has built a loyal following in the U.S. and around the world with premium products that lead the industry in taste, quality and innovation.  To maintain this reputation of excellence, CJR has developed a unique and distinctive system relating to the development, establishment and operation of fast-food restaurants.  CJR franchises its Carl's Jr. System, allowing entrepreneurs in the U.S., Canada, and elsewhere to develop Carl's Jr. restaurants and practice its proprietary system of operation.  At present, there are more than 1,500 Carl's Jr. restaurants operating around the world.

21.    6Points is a franchisee of CJR, operating four Carl's Jr. restaurants in Ontario, Canada.  6Points was established specifically to operate Carl's Jr. restaurants.  6Points is managed by Kent Graber, who boasts extensive franchise experience, including as a partner of the largest A&W franchisee in Canada with 33 restaurants and over $35,000,000 in sales.

22.    6Points is wholly owned by Westbridge, a Canadian investment company that focuses on real estate syndication and private equity investments.  Westbridge, in turn, is owned by Mr. Meekins (37.85%), Mr. Levine (37.85%), Kemco Holdings (18.92%), and Jim Hutch (5.38%).  Mr. Levine serves as an officer of both Westbridge and 6Points.

23.    In early 2013, Mr. Levine approached CJR to franchise its Carl's Jr. System.

24.    On November 13, 2013, CJR and 6Points entered into a "Development Agreement for Use in Canada."  *See* Exhibit A (Development Agreement and Addenda thereto).  The Development Agreement grants to 6Points

the right to develop 30 Carl's Jr. restaurants, subject to certain terms, conditions, and limitations. In exchange, 6Points agreed to pay CJR a $300,000 Development Fee ($10,000 per franchised restaurant) and a $25,000 training fee. *Id.* at § 4.A, App. B. 6Points acknowledged and agreed that "the Development and the Training Fee are fully earned by CJR when paid, are not refundable and are not credited against any other fees to be paid to CJR." *Id.* at § 4.A.

25. The Development Agreement sets forth a specific schedule by which 6Points must develop the franchised restaurants, with all 30 restaurants to be opened by January 31, 2020. *Id.* at App. B. The agreement makes clear that strict adherence to the schedule, set forth in Attachment B, is "essential to this Agreement." *Id.* at § 3.A. "Time is of the essence." *Id.*

26. Under Attachment B, 6Points is required to open a certain number of restaurants by January 31 of each year. Thus, 6Points was required to open Franchised Restaurants 1-3 by January 31, 2015. *Id.* at App. B. In breach of the Development Agreement, 6Points failed to open restaurant 3 by that date.

27. 6Points is required to open Franchised Restaurants 4-8 by January 31, 2016. *Id.* In breach of the Development Agreement, 6Points has failed to take the steps necessary to open restaurants 5-8 by the contractual deadline.

28. Under the Development Agreement, because the territory is located in Ontario, claims or controversies arising out of the agreement are governed by Ontario law. *Id.* at § 26.A. Under the agreement, "CJR may file suit in the federal or state court located in the jurisdiction where its principal offices are located at the time suit is filed," *i.e.*, in this District, or, "in the federal or provincial court located in the jurisdiction where . . . any Franchised restaurant is or was located," *i.e.*, in Ontario. *Id.* at § 26.B. The agreement further provides that if the Development Territory is located in Ontario, as is the case, 6Points may file suit in Ontario. *Id.* In other words, the forum selection provision permits suit in either the Central District of California or Ontario.

29.     In signing the Development Agreement, 6Points acknowledged that "[t]his Agreement involves significant legal and business rights and risks.  CJR does not guarantee Developer's success."  *Id.* at § 28.A.

30.     Prior to executing the Development Agreement, CJR made the required disclosures to 6Points under Ontario's *Arthur Wishart Act (Franchise Disclosure)*, S.O. 2000 c. 3 (the "*Arthur Wishart Act*" or "*AWA*").

31.     The Development Agreement designates a Continuity Group.  *Id.* at § 12.D & App. C.  That group consists of Messrs. Meekins and Levine, each of whom, as noted, owns a 37.85% stake in Westbridge, which, in turn, owns a 100% stake in 6Points.  *Id.* at App. C.

32.     The Development Agreement specified that "[a]ll members of the Continuity Group shall jointly and severally guarantee [6Point's] payment and performance under this Agreement and shall bind themselves to the terms of this Agreement pursuant to the attached Guarantee and Assumption of Developer's Obligations (Guarantee)."  *Id.* at § 12.E.

33.     However, on November 13, 2013, the same day that the Development Agreement was executed, CJR and 6Points entered into a Letter of Credit Agreement.  *See* Exhibit B (Letter of Credit Agreement).  The Letter of Credit Agreement provided that "[i]n lieu of the execution of a Guarantee by Franchisee's owners…, CJR has agreed to accept [a letter of credit], as security for Franchisee's obligations . . . to CJR and its affiliates under the Development Agreement and all Franchise Agreements executed in furtherance of the Development Agreement." 6Points agreed "to obtain and deliver to CJR, within 90 days after its execution of this Agreement, an irrevocable letter of credit in the amount of CAD $1,000,000.00."  *Id.* at § 1.

34.     The letter of credit was to be automatically renewed through September 30, 2016.  *Id.* at § 2.C.  The agreement states that as long as 6Points is in compliance, "CJR will not require execution of the Guarantees associated with

FIRST AMENDED COMPLAINT

the Development Agreement and any Franchise Agreement." *Id.* at § 4.  Mr. Levine signed the Letter of Credit Agreement on behalf of 6Points.

35.    6Points did not obtain the required letter of credit.

36.    In the course of negotiations of the Development and Letter of Credit Agreements, Messrs. Meekins and Levine represented that they would cause 6Points to obtain the required letter of credit.  They made these statements to Ned Lyerly, President, International, CKE Restaurants Holdings, Inc.  (CJR is a wholly-owned, indirect subsidiary of CKE Restaurants Holdings, Inc.)  CJR reasonably relied on Messrs. Meekins' and Levine's promises because, among other reasons, they each own a 37.85% stake in Westbridge, which, in turn, owns a 100% stake in 6Points.  In the absence of such representations, CJR would not have agreed to allow 6Points to provide a letter of credit in lieu of the Guarantee by the Continuity Group.

37.    On September 11, 2014, CJR and 6Points entered into a "Franchise Agreement for Use in Canada," granting 6Points a 20-year nonexclusive right to operate a Carl's Jr. restaurant at 75 King Street in Waterloo, Ontario, Canada, with options for renewal.  *See* Exhibit C (Waterloo Franchise Agreement and Addenda thereto).  Under that agreement, 6Points agreed to pay CJR a $35,000 initial franchise fee, which it acknowledged was "fully earned at the time paid and it is not refundable for any reason whatsoever."  *Id.* at § 3.A; *see also id.* at App. A.  6Points further agreed to pay a nonrefundable 5% gross sales royalty fee, a 3% gross sales advertising fee, and $150 per month into a Production Fund (the latter two as a portion of 6Points' broader advertising and promotion obligation).  *Id.* at §§ 3.B, 3.C, App. A.  The agreement provides for termination under limited circumstances, none of which are applicable here.  *Id.* at § 18.

38.    As with the Development Agreement, the Waterloo Franchise Agreement provides that Ontario law will govern any claims or controversies arising out of the agreement, the parties may file suit in either the Central District

of California or Ontario, and 6Points consents to personal jurisdiction and venue. *Id.* at §§ 27.A, 27.B.  Again, 6Points acknowledged that the agreement involved "significant legal and business rights and risks.  CJR does not guarantee Franchisee's success."  *Id.* at § 29.A.

39.    In connection with the Waterloo Franchise Agreement, CJR made the required disclosures to 6Points under the *AWA*.

40.    On December 20, 2014, CJR and 6Points entered into a "Franchise Agreement for Use in Canada" to operate a Carl's Jr. restaurant at 292 Stone Road W, Guelph, Ontario, Canada, with the same relevant terms as the Waterloo Franchise Agreement described in paragraphs 30 and 31.  *See* Exhibit D (Guelph Franchise Agreement and Addenda thereto).

41.    In connection with the Guelph Franchise Agreement, CJR made the required disclosures to 6Points under the *AWA*.

42.    On March 5, 2015, CJR and 6Points entered into a "Franchise Agreement for Use in Canada" to operate a Carl's Jr. restaurant at 1431 Yonge Street in Toronto, Ontario, Canada, with the same relevant terms as described in paragraphs 30 and 31.  *See* Exhibit E (Yonge Street Franchise Agreement and Addenda thereto).

43.    In connection with the Yonge Street Franchise Agreement, CJR made the required disclosures to 6Points under Ontario's *AWA*.

44.    On April 8, 2015, CJR and 6Points entered into a "Franchise Agreement for Use in Canada" to operate a Carl's Jr. restaurant at 272 Queen Street W in Toronto, Ontario, Canada, with the same relevant terms as described in paragraphs 30 and 31.  *See* Exhibit F (Queen Street Franchise Agreement and Addenda thereto).

45.    In connection with the Queen Street Franchise Agreement, CJR made the required disclosures to 6Points under Ontario's *AWA*.

/ / /

FIRST AMENDED COMPLAINT

46.     The Waterloo, Guelph, Yonge Street and Queen Street Franchise Agreements, and the addenda thereto, are collectively referred to herein as the "Franchise Agreements."

47.     6Points has failed and continues to fail to make to CJR the required payments under the Franchise Agreements.  As of the date of filing this Complaint, 6Points owes CJR at least $87,078.37 in royalties and fees due under the agreements.

48.     On November 10, 2015, almost two years after signing the Development Agreement and after more than a year of operating Carl's Jr. restaurants under the Franchising Agreements, counsel for 6Points transmitted to CJR a purported "Notice of Rescission."  *See* Exhibit G (Letter from Lloyd Hoffer to Carl's Jr. Restaurants LLC).  In the letter, 6Points asserts wrongly and for the first time that CJR's extensive disclosures were defective.  Invoking Section 6 of the *AWA*, 6Points (i) claims that all of the agreements between the parties were rescinded effective immediately, (ii) announces that it would cease operations of its Carl's Jr. restaurants by January 10, 2016, and (iii) asserts that it is entitled to refunds, compensation and buy-backs in the amount of $7,000,000.

49.     6Points' assertion of inadequate disclosure is a pretext.  6Points purported rescission is, in fact, an attempt to exit CJR's franchise system because of its inability to operate successfully by reason of its own mismanagement.

## COUNT I

## Breach of Development Agreement by 6Points

50.     CJR realleges and incorporates by reference the allegations of paragraphs 1 through 42 as if fully set forth in this Count I.

51.     Under the Development Agreement, for which "time is of the essence," 6Points was required to open restaurants 1-3 by January 31, 2015. 6Points failed to open restaurant 3 by that date.

/ / /

52.    Under the Development Agreement, 6Points is required to open Franchised Restaurants 4-8 by January 31, 2016. 6Points has failed to take the steps necessary to open restaurants 5-8 by the contractual deadline.

53.    As a direct and proximate result of 6Points' breaches of the Development Agreement, CJR has suffered damages in an amount to be proven at trial.

## COUNT II
### Breach of Franchise Agreements by 6Points

54.    CJR realleges and incorporates by reference the allegations of paragraphs 1 through 46 as if fully set forth in this Count II.

55.    6Points is obligated under the terms of the Franchise Agreements to pay CJR 5% of its gross sales as a royalty fee, 3% of its gross sales as an advertising fee and $150 per month into a Production Fund.

56.    6Points has breached the Franchise Agreements by failing to make these required payments.

57.    As a direct and proximate result of 6Points' breach of the Franchise Agreements, CJR has suffered damages in an amount to be proven at trial, but not less than $87,079.37.

## COUNT III
### Breach of the Letter of Credit Agreement by 6Points

58.    CJR realleges and incorporates by reference the allegations of paragraphs 1 through 50 as if fully set forth in this Count III.

59.    Under the Letter of Credit Agreement, 6Points is required to obtain and deliver a letter of credit in the amount of CAD $1,000,000, which is to remain in effect through September 30, 2016.

60.    6Points failed to obtain and deliver a letter of credit.

61.    As a direct and proximate result of 6Points' breach of the Letter of Credit Agreement, CJR has suffered damages in an amount to be proven at trial.

## Count IV

## Breach of Contract—Anticipatory Repudiation—by 6Points

62.     CJR realleges and incorporates by reference the allegations of paragraphs 1 through 54 as if fully set forth in this Count IV.

63.     CJR and 6Points were parties to valid, enforceable Franchise and Development Agreements that imposed duties and obligations on both parties.

64.     In its November 10, 2015 letter, 6Points clearly, absolutely, and unequivocally refused to perform its obligations — and announced its intention not to perform its obligations in the future — under the Development and Franchise Agreements by asserting that the agreements were rescinded, stating its intent to cease operation of its Carl's Jr. franchised restaurants by January 10, 2016, and demanding return of payments made to CJR.

65.     As a direct and proximate result of 6Points' anticipatory repudiation, CJR has suffered damages in an amount to be proven at trial, but not less than the present value of CJR's lost future royalties and fees.

## Count V

## Declaratory Judgment of Compliance with the *Arthur Wishart Act*

66.     CJR realleges and incorporates by reference the allegations of paragraphs 1 through 58 as if fully set forth in this Count V.

67.     In connection with the Development and Franchise Agreements, CJR provided all required disclosures to 6Points.

68.     In its November 10, 2015 letter, 6Points wrongly asserts that CJR failed to comply with the *AWA*.  6Points therefore repudiated the parties' contracts and demanded $7,000,000.

69.     Due to 6Points' actions and assertions, an actual case or controversy exists as to whether CJR has complied with the disclosure requirements of *AWA*.

70.     Under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, the Court may declare the rights and legal relations between the parties.

71.     As the parties specifically agreed in the Development and Franchise Agreements, this Court can decide CJR's declaratory judgment and other claims. Even assuming that it is relevant to the issue, the *AWA* stands as no barrier. Section 10 of that Act states "[a]ny provision in a franchise agreement purporting to restrict the application of the law of Ontario or to ***restrict jurisdiction or venue to a forum outside Ontario*** is void with respect to a claim otherwise enforceable under this Act in Ontario."  (emphasis added).  The choice-of-law and choice-of-forum provisions in the Development and Franchise Agreements are consistent with the *AWA*, as they provide that (i) Ontario law applies to all disputes arising thereunder, and (ii) the parties may, but are not required to, file suit in Ontario.

72.     The *AWA* does not require that all claims arising under, or implicating, the Act must be heard in Ontario.  Rather, as the explicit language of the *AWA* provides, the franchise agreement need only provide the parties with the option of filing suit in Ontario.  *Cf. Big O Tires, LLC v. Felix Bros.*, Inc., 724 F.Supp.2d 1107, 1113 (D. Colo. 2010) (holding that California's franchise law — which, like the AWA, states "[a] provision in a franchise agreement ***restricting venue to a forum outside this state*** is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state" — ***"does not guarantee California franchisees that they will litigate disputes in California; it merely ensures that they will have the opportunity to do so"***) (emphases added); *Hoodz Int'l, LLC v. Toschiaddi*, No. 11-15106, 2012 WL 883912, at *5 (E.D. Mich. Mar.14, 2012) (same).  That is precisely what the forum provision of the parties' agreements did here.

## COUNT VI
## Promissory Estoppel by Meekins and Levine

73.     CJR realleges and incorporates by reference the allegations of paragraphs 1 through 65 as if fully set forth in this Count VI.

/ / /

13

74.     Messrs. Meekins and Levine represented that they would cause 6Points to obtain the required letter of credit.

75.     CJR reasonably relied on Messrs. Meekins' and Levine's representations.

76.     In the absence of such representations, CJR would not have agreed to allow 6Points to provide a letter of credit in lieu of the guarantee by Messrs. Meekins and Levine of 6Points' obligations under the Development and Franchise Agreements.

77.     As a direct and proximate result of Messrs. Meekins' and Levine's actions, the Letter of Credit Agreement was breached, CJR was left without security to enforce 6Points' contractual obligations, and CJR consequently suffered damages in an amount to be determined at trial.

## COUNT VII

### Brach of Contract by Meekins and Levine

78.     CJR realleges and incorporates by reference the allegations of paragraphs 1 through 70 as if fully set forth in this Count VII.

79.     Messrs. Meekins and Levine agreed that they would cause 6Points to obtain a letter of credit securing 6Points' obligations under the Development and Franchise Agreements.

80.     In exchange, CJR agreed that Messrs. Meekins and Levine were not required to guarantee 6Points' obligations under the Development and Franchise Agreements.

81.     Messrs. Meekins and Levine breached the parties' agreement by failing to cause 6Points to obtain the letter of credit.

82.     As a direct and proximate result of Messrs. Meekins' and Levine's breach, CJR suffered damages in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, CJR respectfully requests:

14

A.    A judgment that 6Points has breached the Development, Franchise, and Letter of Credit Agreements;

B.    A judgment that 6Points has anticipatorily repudiated the Development and Franchise Agreements;

C.    A declaratory judgment that CJR has not violated the *Arthur Wishart Act*;

D.    A judgment against Messrs. Meekins and Levine for breach of contract and promissory estoppel;

E.    Damages sufficient to compensate CJR for 6Points' breaches of the Development, Franchise, and Letter of Credit Agreements;

F.    Damages sufficient to compensate CJR for 6Points' anticipatory repudiation of the Development and Franchise Agreements;

G.    Damages sufficient to compensate CJR for Messrs. Meekins' and Levine's misconduct;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

FIRST AMENDED COMPLAINT

H.    Fees and costs incurred in pursuing this action; and

I.    Such other relief as the Court deems just and proper.

Respectfully submitted,

Dated:  January 14, 2016

By: /s/ Scott J. Ferrell
     Scott Ferrell – SBN 202091
     Email:  sferrell@trialnewport.com
     NEWPORT TRIAL GROUP
     4100 Newport Place Drive
     Suite 800
     Newport Beach, CA 92660
     Telephone:    949.706.6464
     Facsimile:    949.706.6469

     *Of Counsel*,

     Gregory M. Williams
     (admitted *pro hac vice*)
     Email:  gwilliams@wileyrein.com
     Wiley Rein LLP
     1776 K Street NW
     Washington, DC  20006
     Telephone:    202.719.7000
     Facsimile:    202.719.7049

     *Attorney for Plaintiff Carl's Jr.*
     *Restaurants LLC*

FIRST AMENDED COMPLAINT

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated: January 14, 2016

Respectfully submitted,

By:   __/s/Scott J. Ferrell_____
     Scott Ferrell – SBN 202091
     Email:  sferrell@trialnewport.com
     NEWPORT TRIAL GROUP
     4100 Newport Place Drive
     Suite 800
     Newport Beach, CA 92660
     Telephone:     949.706.6464
     Facsimile:     949.706.6469

     *Of Counsel*,

     Gregory M. Williams
     (*pro hac vice* pending)
     Email:  gwilliams@wileyrein.com
     Wiley Rein LLP
     1776 K Street NW
     Washington, DC  20006
     Telephone:     202.719.7000
     Facsimile:     202.719.7049

     *Attorney for Plaintiff Carl's Jr. Restaurants LLC*

17

FIRST AMENDED COMPLAINT

1

## <u>CERTIFICATE OF SERVICE</u>

2

3     I hereby certify that on January 14, 2016, I electronically filed the foregoing

4     **FIRST AMENDED COMPLAINT FOR DECLARATORY AND MONEY**

5     **JUDGMENT AND JURY DEMAND** with the Clerk of the Court using the

6     CM/ECF system which will send notification of such filing via electronic mail to

7     all counsel of record.

8

9

10                                              */s/Scott J. Ferrell*
                                                Scott J. Ferrell

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28